UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EBONY RENEE THOMAS,

                Plaintiff,

    v.                                             **DECISION AND ORDER**
                                                                                13-CV-116S

CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.    Plaintiff Ebony Thomas challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

2.    Thomas filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act on January 26, 2010, and an application for Disability Insurance Benefits ("DIB") under Title II of the Act on April 10, 2002. In each application, Thomas alleged she had been disabled from working since March 25, 2009 due to multiple sclerosis ("MS"). (R. 67-68, 138, 142.)[2] The applications were denied on July 14, 2010. (R. 77-81.) Thomas then requested a hearing, which was held before ALJ Bruce R. Mazzarella on October 26, 2011. (R. 29-53.) Thomas was represented by counsel at the hearing, at which she appeared in person and testified. (Id.)

3.    ALJ Mazzarella considered the applications *de novo* and, on November 15,

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the administrative record are designated as "R."

2011, issued a written decision finding Thomas was not disabled from March 25, 2009 through the date of the decision. (R. 16-24.) Thomas filed a request for review with the Appeals Council, which denied the request on December 6, 2012. She commenced this civil action on February 4, 2013, challenging the Commissioner's final decision.[3]

4.   On August 5, 2013 and September 6, 2013, respectively, Thomas and the Commissioner filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 6 and 9.) The motions were fully briefed on December 24, 2013, at which time this Court took the matter under advisement.  For the reasons set forth below, the Commissioner's motion is granted and Thomas's motion is denied.

5.   A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.   "To determine on appeal whether the ALJ's findings are supported by

---

[3] The ALJ's January 4, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.   The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. In this case, the ALJ made the following findings with regard to the five-step process: (1) Thomas had not engaged in substantial gainful activity since her alleged disability onset date of March 25, 2009 (R. 18); (2) her multiple sclerosis was a severe impairment within the meaning of the Act (Id.); (3) this impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 19); (4) Thomas had the residual functional capacity ("RFC") to perform the full range of sedentary work with occasional lifting and carrying of up to 10 pounds (Id.; (5) she has no past relevant work (R. 23); and (6) jobs existed in substantial number in the national economy that an individual of her age, education, work experience, and RFC could perform (Id.).

11. Thomas maintains the ALJ committed reversible error by: (a) failing to adequately consider and weigh the opinion of consultative examiner, Dr. Kelley, (b) failing to adhere to the requirements of SSR 96-8p; and (c) drawing an adverse inference from her noncompliance with prescribed treatment without considering any explanations that might exist.

12. Thomas was seen by consultative examiner Kathleen Kelley, M.D. on June 29, 2010. Dr. Kelley's examination showed that Thomas had normal gait and station, her joints were stable with full range of motion, she had full strength in her upper and lower extremities, full grip strength, intact hand and finger dexterity, no muscle atrophy, and uncorrected vision of 20/25 in the right eye, 20/25 in the left eye, and 20/20 in both on a Snellen chart at 20 feet. (R. 354-357.) Dr. Kelley provided a medical source statement in which she opined that Thomas:

> should refrain from areas where she needs acute vision and consider an eye examination. She should refrain from activities requiring balance, and working around heights, sharps, or heavy equipment. She should refrain from areas where she could catch an infection.

(Id. at 357.) Thomas now contends the ALJ's failure to consider and adopt each limitation—specifically, those relating to vision and risk of infection—was a "clear violation of 20 C.F.R. § 404.1527(d)."[4] (Docket No. 6-1 at 8.)

The medical records establish that Thomas experienced a brief loss of vision in 2006 and again in 2007. On both occasions, she was hospitalized for three days, and it

---

[4] This regulation relates to "medical source opinions on issues reserved to the Commissioner," and does not appear to be relevant here. Elsewhere, Thomas refers to the ALJ's duty under 20 C.F.R. § 404.1527(b), and the Court presumes it is this regulation Thomas claims was violated:

> How we consider medical opinions. In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.

5

was noted she had not been following the prescribed course of treatment for her MS when the incidents occurred. (R. 225, 235.) Other than these incidents, Thomas's examinations from 2006 to 2011 show uncorrected vision ranging from 20/20 to 20/30 in the right eye, and 20/20 to 20/25 in the left eye. (R. 251, 264, 314, 315, 355, 556.) In June 2011, a treating source assessed her visual acuity as 20/20 in both eyes, with normal ocular movement (R. 556), and no treating source imposed vision-related limitations.

In his decision, the ALJ acknowledged that Dr. Kelley did limit occupations requiring acute vision, but noted that repeated testing revealed almost normal visual acuity with normal eye movement and no severe vision loss. (R. 22.) The ALJ's determination is preceded by a detailed summary of treatment records, the consultative examiner's report, and Thomas's subjective testimony. There is substantial evidence to support the ALJ's determination that Dr. Kelley's limitation was inconsistent with the medical record.

Similarly, while Dr. Kelley also opined that Thomas should refrain from occupations where she might be exposed to infection, her report does not indicate any history of, or assess a risk of, infection. No treating source has required that Thomas avoid exposure to infection. "The ALJ may rely not only on what the record says, but also on what it does not say." June v. Colvin, 12-CV-6461T, 2013 WL 3759813, at *6 (W.D.N.Y. July 15, 2013) (citations and internal quotation marks omitted). Again, the Court finds no error in this regard.

13.     Thomas next contends that the ALJ's RFC assessment lacks a narrative sufficient to enable this Court to determine whether he considered her non-exertional impairments of pain, spasms, and numbness. She maintains that because she reported non-exertional symptoms to her physicians on four occasions (R. 245, 300, 310, 556-57), the ALJ was required to explain why these medical records did not support a finding of

6

impairment in the use of her extremities.

It is well-settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96–8p, 1996 WL 374184, at *7 (S.S.A.); see also Balsamo v. Chater, 142 F.3d 75, 80–81 (2d Cir.1998). This does not mean the ALJ is required to discuss every complaint raised in the medical record, but he or she must specifically address limitations or conditions for which there is substantial record evidence. See, e.g., Mason v. Barnhart, 96 Fed. Appx. 30 (2d Cir. 2004) (vacating judgment in favor of Commissioner and directing that ALJ specifically address "substantial evidence" in the record that claimant suffered from carpel tunnel syndrome).

The ALJ limited Thomas to sedentary work. An assessment of the ability to perform sedentary jobs necessarily focuses on the upper extremities. Social Security Ruling 96-9p, 1996 WL 374185, at *3, 8 (S.S.A.) ("[m]ost unskilled sedentary jobs require good use of both hands and the fingers"). The Court finds no error here because, contrary to Thomas's assertion, the records she cites do not contain "substantial evidence" that her ability to perform sedentary work was limited due to pain, spasms, and numbness in her arms and hands. When Thomas complained of right hand weakness and slight numbness in 2007, she was found to be perfectly strong in all extremities and intact for pinprick in both hands. The condition was improving and, although she was unable to work at that time, her treating source referred her for vocational placement. (R. 245.) In May 2009, Thomas reported right flank pain. (R. 300.) In January 2010, she reported pain and cramps in her legs after having a stomach illness and diarrhea. (R. 311.) In June 2011, it was noted that

Thomas had been off her prescribed medication for one year during which she reported experiencing weakness, spasms and coordination problems, primarily in the lower extremities, with weakness and spasm in her right upper arm. (R. 556-57.) On examination, one month after resuming treatment, Thomas had normal upper extremity strength, pinprick sensation, and vibration. (Id.)

In addition, in June 2010, Dr. Kelley found Thomas had intact fine motor activity of the hands. (R. 356.) Nearly every visit to a treating source during the relevant period was unremarkable or revealed only mild symptoms, with no limitations imposed by any treating source. (R. 226, 236, 243, 245, 250, 251, 256, 258, 260, 262, 264, 267, 268.) The ALJ expressly noted that Thomas's diagnostic scans showed no changes before her alleged disability onset date to well after. (R. 22, 542-43 (comparing November 2007 and December 2010 scans).) Because the medical record does not include substantial evidence of upper extremity limitations, the ALJ was not required to consider and discuss whether Thomas's ability to perform sedentary work was compromised in this regard.

14. Finally, Thomas maintains that the ALJ adversely assessed her credibility based on her noncompliance with prescribed treatment in violation of Social Security Ruling 96-7p. The Ruling states, in pertinent part, that "the individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed," but the adjudicator must first consider explanations the individual provides, "or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7 (S.S.A.)

At her administrative hearing, Thomas testified that she takes daily medication for

spasms, a monthly IV treatment for MS, and has blood work done every three months. (R. 43-45.) She testified she experiences tightness in her chest, headache, and joint pain after her IV treatments, that she is incapacitated for "a good couple of weeks" as a result, and that her doctor told her to rest for a couple of weeks after treatment. (R. 46.)

The ALJ reviewed the medical record and found that, prior to the hearing, Thomas had a long history of noncompliance which was "inconsistent with her allegations of continuing disability." (R. 22.) The records reveal a variety of explanations for noncompliance. Thomas's initial MS treatment involved a daily subcutaneous injection. At different times she reported the medication burns and itches (R. 264), she simply did not like the idea of taking daily medication (R. 235), and she was taking the medication only one-third of the time for no specific reason (R. 251). Her mother sought to keep her compliant, but was having daily arguments with her. (R. 251, 264.) After changing to the monthly IV treatment, Thomas ceased treatment for four months because her Medicaid was cut off. (R. 315.) After resuming treatment, the provider noted that Thomas was doing well on a prescribed course of treatment, but that she was missing appointments and was not compliant with treatment protocols. (R. 313.) She was later discharged from Lifetime Health for failure to keep appointments. (R. 477.)

Contrary to Thomas's testimony, no treating source required that she rest for two weeks after treatment. Indeed, shortly after Thomas began her monthly IV, her provider stated: "she is doing very well with this treatment. She gets a little tired for a couple of days after her infusions, but this should improve with time. The numbness sensation in her hand has resolved." (R. 243.) Similarly, no treating source identified persistent or serious side effects.

In addition to detailing this noncompliance, the ALJ addressed other inconsistencies between Thomas's hearing testimony and record evidence regarding her daily activities, the intensity, persistence, and frequency of her symptoms, and treatment measures. In sum, the ALJ properly based his credibility assessment on the entire case record, and the assessment is supported by substantial evidence. See 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

****

IT HEREBY IS ORDERED, that the Commissioner's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 23, 2014
         Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    Chief Judge
                                    United States District Court